There's two ways to deal with that. One would be to ask the government if they intend to pursue that avenue that you suggest. And two, even if they are, whether we're willing to enter into an order that says if you turn them over, there isn't any possibility of retribution. The government never suggested that below, if there's certain appeals on the law firm. In a vote of the briefing below, they never suggested that. The first time an argument was made that the documents should just be turned over to ABC Group was in the government's responsibility here. And what it would do, among other things, it would make sure that the government would disappear. Because if the answer was early, none of the cases have had that. None of the circuits have had that. Once the third party has been subpoenaed and will not withstand a contempt citation, none of the cases thus far have ever suggested just go around Coleman. Go around the exception, the court's very recorded exception. At least Mr. Robbins is going to say just the opposite. You can play hot potato by the way you deal with it here. In this case, you've got the ABC has been served with a subpoena, correct? But it was never served effectively in the government. They're not priced that below. And the court in its opinion noted that the subpoena was never served effectively on ABC Group. And guys, how is it that it wasn't served effectively? Because they served it on a former employee, a company which had been out of business for six years. And the lawyer from the employee said the subpoena was not effective and the government never moved to enforce it or compel. Instead, they moved to compel while they named the ABC Corporation. They never actually observed the subpoena and they named the law firms and pressed against the law firms. But you've got an order of appeal here that commands the privilege order itself to disclose the sought-after documents, the 167 documents. Is that correct? Yes, but we believe that portion of the court, I believe, conceded it in its opinion. The opinion itself concedes that the service against mid-courts, the ABC Corporation, was ineffective. I'm glad that you're not mid-court. And they said it was a no-movement. The court said it was a no-movement. Why do you need opinion? Because the law firms have been served. So you have an order of appeal which you argue is not effective against ABC Corporation. And more importantly, even if it was effective, again, they don't have the documents. If the answer is separate, just give the documents back to the corporation any time a lawyer has them, we'll have a hundred years of case law, which is being described. And just about every circuit court has adopted Perlman. Very well. And none of this was ever suggested before the government gave it its brief. Can you point me to any case in which a court of appeals has allowed an appeal pursuant to Perlman, even though the challenged order commanded the privilege holder to disclose the documents? No, I cannot. So you're asking us to go out and dig new ground. No, we don't think so, because the order itself was not effective against the entity. It was a no-movement because the entity did not have the documents. Even if the order was effective, the entity can't produce the documents. There's nothing for them to produce. They have no possession, no control, no custody. The two law firms have the documents. So we do not think we're extending the law. We're asking you to apply the law. So who do the law firms represent? So who do the law firms represent? One law firm represents the privilege holder and John Doe 1. The second law firm represents John Doe 2, who the government believes was running ABC Corporation. If the law firm represents the privilege holder, then the privilege holder has the ability to instruct the law firm what to do. I'm not sure why you can make the argument that ABC doesn't have the documents. If a party that stands in the stead of ABC has the documents, it's functionally the same. Not what you're speculating on. None of the courts. That could have happened in 100 years of Roman case law. And there are 50 to 100 cases of third-party custody of the documents. And it's essential to return it to the entity so they could be held in contempt. Some cases between Perlman and now were held that way. And simply by saying a lawyer is an agent for the entity does not answer the issue. A separate subpoena was served on the law firms. The subpoena that those of the entity's law firms have the documents. The entity doesn't have the documents. Perlman will not need none of these cases where it needed to reach the Perlman doctrine. And the answer is as simple as turn the documents back over to the entity and let them be held in contempt. And there's not a single case that we found that really has a gun in sight with that type of solution to this problem. Instead, the law has been that an interlocutory appeal has been taken because the privilege held you would not risk a contempt citation such as the law firms use. And they won't risk a contempt citation. Back to my question. Let's assume for the moment that we give you the protection that there can be no retribution against you or your co-counsel's firm if you turn the documents over to ABC. Okay. Then we'll be back here very shortly. So in terms of judicial economy and judicial efficiency Wait a minute. How are we going to be back here very shortly? The same substantive issue would be subject to appeal. And it's likely that ABC Corp would be subject to an appeal on an interlocutory basis. No. Then it would have to be a contempt citation. Right. But ABC Corp would only likely withstand a contempt citation to take the appeal. Well, that almost seems like that's the easy way out then. If you at least approach the government and see if they're willing to say, okay, if you turn the documents over to ABC and they refused to turn over the 167 documents, they are found of contempt, then we have parole and apply. But that seems like certainly it's the parole way to go. Well, except you're going to appeal on a pro bono, right? You're going to get a contempt citation against ABC Corp. And the problem is we looked at some of the cases today. The contempt citation could be $50,000 a day, $100,000 a day, $50,000 a big child. And while we have a false answer, I'm not sure any entity we can rely on with a sufficient contempt order can assume that. And then there is no appeal. And then there may never be an appeal. So that's the problem. But then the question with that approach, the problem is you have a choice. And the party that's the privilege holder has that choice. That's true, except I hear the point. But you would think that once in 100 years of law in this area, with all sorts of laws being subpoenaed, where the document custodians or the persons from whom testimony was sold, that somebody would have to suggest that this is a way to deal with Parliament and it would have arisen before. And we don't think it's too facile an approach to evade Parliament. Parliament exists for a reason. And the reason is to permit this type of interlocutory deal and to correct errors in the law for which we bring it to the court. But back to my question, that if we allow a Parliament appeal when the privilege holder is itself subject to the disclosure order of the district court, then all you really have is a game of hop-a-tick. All that would be is to ask documents back. Yeah, if the court believed me, that didn't happen here. The documents weren't moved to create appeal. We just put that in there because we want to see the time. But that's not what happened here. The documents came from a law firm or she didn't do the IRS work. If the IRS were a preserver and our phones came into the matter, they wouldn't want me to see the documents. The government decided to serve a subpoena. So there was never an issue that the entity moved the documents to the lawyers to anticipate a Parliament appeal, which might happen two or three years later. So that's not the history of what happened here. The documents were in the different law firms' hands. They were turned over to one law firm who didn't have room to store them, and therefore the second law firm was permitted to store them. And that's when the subpoenas were served. And it seemed to me that the government wanted to raise the issue of just turning them back to the entity. The chair had done it before, and it never did. It never raised the issue here, and the court is creating a solution to a problem which Perlman was designed to fix in a different fashion. And we think the court should follow the Perlman analysis. And there is jurisdiction over this appeal because the order was ineffective  It was effective only against the lawyers holding the documents. In Perlman, he was not subject to the subpoena, correct? That's correct. Perlman was subpoenaed to the clerk of the court for the way he testified. But again, the subpoena here was served on a former employee and it was a member whose lawyer told him not to speak about this. It was told him not the person to serve, not a custodian, and the government did not move to compel against that. It should not be easy enough for the government to add an entity any time they seek documents and lawyers' hands and be able to avoid Perlman. That's the other side of this, which is what the government did here. They added the entity, ABC Corporation, to their motion even though they knew they had not served them, even though they knew the documents were not in the entity's possession. And they should not be able to simply because the court entered above you the court conceded the subpoena to evade Perlman by that kind of an ips and trips that they can use in every case as well. The 167 documents are roughly how many pages? That's a tougher answer. Five inches thick, seven inches thick. I sort of feel like Mark Throberg in the Bill of Rights commercial. Why are you in this commercial? Excuse me? Why is your firm in this commercial? Because the other law firms do not have storage facilities. It's not simple, but it's a small law firm. And they do not have the... I'm not going to answer your question. We have 24 boxes. We have 24 boxes of documents. Only about five inches were printed, but there were 24 boxes of documents, which came from a law firm. So at this point, I mean, I admire your stick-to-it-as, but why not just turn it over, if not to ABC, then to Mr. LeShulman's firm? Well, for the same reason. We were subject to a subpoena as well. We do not take subpoenas lightly. We do not move documents around other than to segregate them and preserve them. Did you approach the government to see if they would have an objection if you gave the documents over to any of those two entities? No, we didn't think once they served the subpoena, it was a friendly approach, so we did not ask them, and they did not volunteer. Once they had served those subpoenas, they were engaged with the firms we were segregating and preserving, and no conversation came up from the government of any other approach which might have been possible then. All right. Let me get from Mr. LeShulman. Your Honor, speaking of detaining the wrongs, I will not detain you wrong, but I think my part of this case should start with a variation of that old childhood riddle, which is when is a doer not a door? The question in this case is when is prima facie finding not prima facie finding? And the answer is when it's based upon nothing more than reasonable suspicion. The Supreme Court in a case called Solon back in 1999, the problem that you've got, I mean, on the merits, there's one issue that I think you're saying that, quote, a reasonable basis to suspect language is not the test that should be used, but rather it should be a reasonable basis to present evidence that demonstrates a reasonable basis for finding that there was a crime committed. Is that correct? That the elements of the crime, Floyd, have been established. Part of the problem may be that there was a case six years ago in which I was on the panel and Judge Snowden wrote an opinion that did talk about reasonable basis to suspect language. The judge here, however, gave the right test at one point and then the reasonable basis to suspect at another point, and I'm not sure that he applied the necessary reasonable basis to suspect test, but instead what you argue is the Tupper test. The evidence was presented that all the elements of the crime existed. If I can answer your question from here, not from here, I will, and I will say that there has been a level of confusion with regard to these terms, especially the term prongfation, and I think it stems from the 2000 decision called the Inouye grand jury subpoena by Judge Snowden in which she laid out the correct standard, which was the standard for the ultimate decision, not the standard for the initial justification for the in-camera review. The whole thing starts with Zolan and the Supreme Court dealing with the standard applicable that would justify the in-camera review, and that's the one that talks about a good faith belief, a factually established good faith belief on the part of a reasonable person. That's basically reasonable suspicion, and Judge Snowden talks about that, and then the Supreme Court in Zolan said, but we're not dealing with the quantum necessary to establish the ultimate issue, which is whether or not the crime floor exception should apply. That was left open. Judge Sloboda acknowledged that in the 2000 opinion, but what happened was this. This was almost like a rabbit going into a hat, and I think it was completely accidental. Judge Sloboda sets forth the standard for the ultimate decision. She then cites four cases of other surveys, the fourth, the ninth, the seventh, and the eighth, where they talk about the standard for the in-camera review, the initial threshold standard. She then makes the following statement, and here's where, as I said, the rabbit went into the hat. Here's where the confusion started. She then says, we today join the ranks of our sister circuits, the four that she just mentioned, in holding that it is within the district court's discretion, not violated the due process, to rely on an ex parte government affidavit to establish sufficient ground to hold that the ultimate issue is that the crime floor exception should apply. That paragraph has nothing to do with the paragraph that preceded it and nothing to do with the paragraph that preceded that. It has nothing to do with the quantum of evidence necessary to establish it, but somehow that's the paragraph that gets adopted in the later cases where they talk about what does prima facie mean in this context, and that's where the confusion comes from, and it's repeated in the 2006 opinion, and it's counted forth in even the later, Judge Barney's, it's a non-published opinion, I think it's called Trank, T-R-A-N-K, from 2010, and what happened is that the court has continually referred to this, the ultimate issue, as being able to be decided on reasonable suspicion, and that's exactly where the district court judge, in this case, got off the track. Sure, he uses the word prima facie. One thing I want to say is that prima facie is used in two different contexts, and sometimes interchangeably and sometimes incorrectly. Well, he found that there was evidence that ABC had engaged in tax crimes, prima facie evidence, and that the communications at issue were made in furtherance of those crimes, and you're saying that those findings were clearly erroneous, isn't that correct? Because he identified the substance of prima facie with the language that really refers to the threshold showing not the... Let me ask you that question. Let's assume it's not a reasonable basis to suspect. Let's assume that it is prima facie evidence that every element of the crime has been committed. In this case, based on the way I read the opinion, is that really just harmless error if there is error at all? Because we talked to it at the beginning that there may not be error. The judge gave two tests, and you're unsure as to which one he necessarily applied. But will it really make any difference at all? Even if he said you're right, by the way, assuming we ever get to your issue. I understand that. I said I'm a tail on the dog here, but I understand that. But yet, I've got the better issue, because this is an exciting issue, and this is one that really means something. And I think that I don't have to disagree with you. I'll tell you this. I think that the standard for prima facie only applies when it's unrebutted. And I know that the district court judge has the right and the discretion, according to the opinions of this court, to deal with it on that basis, just to take ex parte out of the case. But when he says, I will listen to the other judge. Let me ask you another question. Let's assume that's the more interesting issue, and it probably is. But if we don't have appellate jurisdiction, how in the world do we get to your issue? Okay, I'm going to finish my sentence, and then I'll sit down. I think that once the district court judge, it's like one of those things where we don't have to give it to you, but once we give it to you, we've got to let you have a fair shot at it. And the district court judge isn't obligated to do anything but look at ex parte affidavits. That's in one of the in-ray decisions, I think, on this issue. But once the judge does, as in this case, remember, we didn't have to overcome the original threshold showing in this case because we volunteered. The documents were turned over for the judge to inspect. Once the judge wants to engage in that kind of a weighing of the evidence, then he is hearing the rebuttal evidence, then I think the standard is preponderance of the evidence. I think it's even more than just a probable cause, which is what they seem to relate prima facie to. So this is an area which I think is hungry for the real good answer, and I hope the court will find jurisdiction here so they can deal with me. How can that make the rest of my argument? But thank you for coming here. Thank you. Appreciate it. Mr. Roberts. Good afternoon. Thank you, Mr. Court. My name is Alex Roberts, the baron on behalf of the United States. And you know what the first question is going to be. I do, but I want to correct one factual point at the outset, if I might. My colleague, Mr. Minsky, said I think that, as I understood him, that the district court conceded the service was ineffective. Actually, the district court didn't concede it. Okay. That was my question to the court at that point. But in that case, Your Honor, I think the first question is probably going to be the government's position as to You got it. The government certainly would have a problem with the lawyers here sending the documents outside of the jurisdiction. Something like that would be a question of justice. But where is ABC? I guess it's dissolved. Where is it supposedly located right now? It's dissolved. So we don't know where it's supposedly located. Again, this is a grand jury investigation. I think it's incorporating the laws of Florida, and it's developed cooperation. I think my colleague, Counselor, would have more information about that than I would. What would you be okay with? The principles are located where? Right now, we don't know where the principles are located. So we're not sure. So where would the documents go? Our suggestion would be, and again, simply a suggestion given that it is The ABC Corporation is not trying to establish a culture of station canceling. It's a simple suggestion. The government would not have an objection to ABC hiring someone or appointing someone as an employee of ABC to go pick up the documents, let us know, go to law firm, pick up the documents, and I'll serve that person at the subpoena, and do this. The procedure would probably, like we would in any other case, we would serve the person. I would like to have an effective contemporary. That's the problem I have. If you can hire an employee, the employee picks them up, and then you subpoena them, they refuse to produce them, the next step is you go to a contemporary. What do you do with that contemporary? Well, at that point, under the public buy-in rule, the company doesn't have the option of either paying the fine or suffering the contempt. If it's resolved, how are they going to pay the fine? Again, we have limited information about this company that sells, presumably, paying for a variety of other expenses associated with litigation. To the extent that there is a practical issue with fashioning some sort of effective contempt sanction, I think that would be an issue for our tribunal, as well as the district court, and the parties to work out. But that is how it's supposed to be done. Then you go to the contemporary, and then at that point, the company has the choice to either suffer contempt and appeal or comply with the order. That's how it's done in a lot of other cases. And in our positions, you can't simply take a broken appeal by handing documents to the judge. Are you claiming that's what happened here? No. I'm claiming that our opposing counsel argument will lead to that rule. Apparently, what happened here, as far as we are aware, the documents, as Ms. Kaminsky pointed out, were already in the hands of their law firms when the order was issued. And that's why you issued subpoenas to the law firms. Correct. We issued subpoenas first to the company. Okay. And we served, as best we could discern, some of the appropriate person who was a subject of personal intercession with the district court, who was a former employee of the firm. We served that person. They responded that, and again, I think this was the employee's lawyer, though I'm not certain about this. I believe that our opposing counsel took the same position. The argument was made that this is not appropriate service. We disagreed. But because we are trying to conduct a crematorium investigation here, we figured we would also serve with subpoenas to people who have physical custody of the documents. And so then we served the firms at that point. But the rule that they're asking for, it wouldn't make any difference if you anticipated a subpoena coming and you wanted to make sure that you had the ability to take a permanent appeal without going through the public writing rule. You give your documents to your lawyer and then you take a permanent appeal. That's simply not what the case stands for or what the rule represents. The rule is an example of a situation where an order is effectively unreviewable. In other words, a moment that the person has powered us to avoid the mischief of the order. Mr. Kaminsky's argument is if it was so easy to avoid the Perlman rule by simply saying, give the documents back to the crippled shoulder, why hasn't that been done before? And that intuitively makes some sense to me because we've had plenty of cases come up under Perlman. I think the – well, Mr. Kaminsky also pointed out that there's no case factually that goes that way. I, frankly, personally, I don't know why that I'm not aware of cases addressed this precise issue before. I know that, as we pointed out in our briefing, that the Tenth Circuit is the only circuit I know of post-Mohawk that has continued to do a sort of case-by-case analysis that looks at whether the person being subpoenaed is going to suffer contempt or not. We submit that that's just flatly inconsistent with the categorical analysis required by Mohawk. But even in those cases, the – again, as far as we have seen in the expedited briefing process, the person who is the crippled shoulder is not the subject of this W order. And in this case, the ABC company is. Now, I understand their argument about the merits of that. But that argument, first of all, is not – they didn't take that issue on appeal. They simply mentioned their position was that the service was improper. And that wouldn't be subject to an electoral appeal in any event. What we have here is an order where they're entitled to subpoena. And I'm not saying – I'm not conceding it is, but the district judge could, under subpoena, enter an order that applied to ABC Corporation for that subpoena issue. But even if that is wrong, that would be subject to an electoral appeal. That issue is not before this court. Procedural order we have is an order that applies to two law firms and a company. And a company is what it's – help me out. What's the status in the district court? The enforcement of the order of the state? The enforcement of the order of the state by this court. So the district court abused the state order. We had an expedited state motion briefing. And this court stayed in the order. So if we didn't have state, you'd get your contempt order, and we'd be back here on that already. I don't know. I'm not sure we can move quite that fast. But certainly this is – there's an ongoing series of sort of litigations and motions going on. I don't know if there's other. I think we pointed out in our related case that I believe the trial attorneys are lapping up another set of privilege arguments before the district court. And we filed a complaint yesterday. And this is an ongoing set of litigation before the district court. And, again, we are trying to conduct a grand jury investigation. And our position is, as a matter of practice, as well as law, we can't simply be coming here every month while trying to conduct a grand jury investigation to decide either whether people should be indicted or maybe whether they shouldn't. Then we can move on to the legal tribunal or close the investigation entirely. And that's – I think this case is actually a good illustration for why interoperative appeals are not generally permissible under 20 U.S.C. 1291, because we will end up with underoperative appeals every time there's a dispute about a discovery order. And that is certainly not – that's certainly not good for judicial economy. That's not good use of this court's resources on the government. Do we have to decide who does or does not qualify as a disinterested third party under the Church's Scientology formulation of the Perlman test? I think you get to the same result, Judge Engel, whether we take the Church's Scientology approach or whether we let this court president, F.M. Siemens, that Perlman allows the non-CPF perpetrator to appeal, because, at least as the government understands it, there are just different ways to phrase the same test. We don't see any general difference there. To the extent that the standard from the Church's Scientology footnote is disinterested third party, there is simply no such party. I don't think anyone would describe someone's law firm as a disinterested third party in the ordinary sense of the term. Again, this court's phrasing is – Is it enough just to say that Perlman doesn't apply when the contempt route is open to the privilege holder? Yes, I think that would be entirely sufficient to disclose this case. What about Mr. Kaminsky's argument that the subpoena here was invalidly served on ABC? I think that that argument, in addition to being in our new law, is not something that is itself subjecting a law firm to appeal. If a district court were – forgive me, but a Perlman issue, and there are no lawyers in the law firms for a minute – if a district court had simply ordered ABC Corporation to respond to the subpoena and ordered them to order the corporation to compel the documents, and ABC said, no, that's wrong, we weren't properly served, and that was the procedural posture of this, and then there was a move from Perlman, let's say, and then they tried to take it on for a deal, that would not be something that was subjecting a law firm to appeal. I think that's just an ordinary discovery. The order of the district court, the argument, has nothing to do with the privilege in the hands of the third party, and everything was invalid. So that issue, in addition to not being briefed by the appellants, is not subjecting a law firm to appeal. You had argued the effect of Mohawk, and argued that somehow it had cut back on Perlman. Do we need to decide what effect, if any, Mohawk has on the Perlman doctrine if we decide that Perlman, in its pre-Mohawk form, does not apply? No, we do not. Those are alternate jurisdictions, depending on the government discourse, that could decide that it lacks jurisdiction on either basis, either under the old Perlman formulation, or under Perlman as narrowed or modified by Mohawk. We think the simpler basis is the old Perlman formulation, although certainly there are jurisdictional facts involved in that, but legally that's more straightforward. The Mohawk argument, just to say a few words about that, what Mohawk stands for is the proposition that the privacy or the confidentiality of interest that component of maternity clinic privilege, although important, is not enough to get you an immediate appeal. That was the issue in Mohawk. Mohawk actually breaks down the argument and says there are two things maternity clinic privilege protects. It protects use, like the Fifth Amendment does, but it also, unlike the Fifth Amendment, it's not just a use privilege. It's a privacy privilege. And although that privacy privilege is important and although it is violated, potentially, when a district court enters an adverse discovery order, that's not meant to get you an immediate appeal. And we think that that, the logic of the whole thing, applies to Portman to prevent an interlocutory appeal under Portman when you're dealing with someone who's in the class of litigants in the formulation of Mohawk who are not entirely shut off from illustrative remuneration. That's not what Mohawk formalized. That's actually the logic of Portman in the beginning, of course, affected on remunerability. So when you're dealing with someone, or a group of people, who are effectively litigants, and I understand that the language doesn't translate perfectly, but to the extent it does, people who have the potential for some sort of post-judgmental appeal, just like parties to a civil proceeding, they might not, they might settle, they might lose a 12B6 function, but the potential for post-judgmental appeal, the privacy interest is not generally, as a class, sufficient to give you an immediate appeal. And that's already on the Mohawk point. But again, that is not, the court could dispose of this case solely on the fact that Perlman does not apply when one of the entities subject to the order, or the furniture holder is itself subject to discovery order. It's not essential for the third party. That's not disposed of in this case. Let me just turn and put the questions on jurisdiction. On the merits, isn't it somewhat bothersome only to you that the district court repeatedly used the words reasonable basis to suspect language throughout the opinion? No, it's not, because the district court, two points in response to that. It doesn't bother me at all, because the district court was quoting this court's decision, and even if there is some distinction between the two terms that I'm not aware of or that I don't fully grasp, that there's nothing wrong with the district court applying a published third-circuit decision to the case before when that decision is determined to be changed. Is there a material difference between the two formulations? No, I don't think so. I can tell you Jeff Slover, obviously, in 2006, didn't think so. I hear Jeff Slover. The other thing he agrees with, not just me personally, but the other thing he agrees with Jeff Slover, that there doesn't seem to be a material difference. Certainly, no one has yet explained more to us in a way that we understand there to be a material difference. I realize Mr. Kuliski is arguing that the reasonable basis in which it resembles Terry Stops, and I don't think that has anything to do with this procedural context. So I agree with Jeff Slover that the formulations appear to be the same. And it's certainly not a universal way for a district judge to use two terms interchangeably that were used interchangeably by a six-year-old third-circuit opinion. If we were to, let's say, have done that in our briefing, we wouldn't think there's anything wrong with using two terms interchangeably, because that's the way this court used them. As I think the question from the court indicated earlier, there's a harmless error statement here as well, and there are sort of two related layers. The first is that a court of appeals should not generally assume that a district court made a legal error when it's not clear. My sort of casual count coming from my training was six to five prime offensia on a reasonable basis, but the very least, it's mixed. And in fact, the first reference appears to be prime offensia after the district court courts Zillow and recites the prime offensia statement. So under the Springer-Hendelson decision, this court should assume that the district court got that right, and there's a harmless error test behind that. If the court has no further questions, we would ask that the judgment of the district court, the order of the district court, be affirmed. No further questions. Thank you very much, Mr. Slover. Thank you. Mr. Kaminsky. Well, I'll give you the cover in two minutes, Your Honor. I want to first start with that there are no subjects to a grand jury proceeding. That's what's called in the grand jury when this common appeal comes up. There are no parties to the proceeding below, and the subjects of the grand jury may never be indicted. If they're never indicted and they're never charged, then we know there may be no way to effectively review what has happened to you. Second, the courts are unanimous except for the one thing, Your Honor, for your question. The courts are unanimous that lawyers are disinterested third parties under the formulation in Scientology, the formulation in the other circuit cases that have always been considered, except for the one, disinterested third parties in the most recent case of the Tenth Circuit case in Randolph Fields. The answer to that is simple. Isn't it enough to say that Pullman doesn't apply when the contempt route is open to the privilege holder? Excuse me, I'm sorry. Isn't it enough to say that Pullman does not apply when the contempt route is open to the privilege holder? Yes, I think that's accurate. So we do not think that the EDC corporation, that the order where they did not have the bond, what do you compel them to produce? They don't have anything. And if you enter a contempt order against them, unless the court suggests an order with no fine attached to it, then I feel a twinge of worry. What about Mr. Robbins' point that, look, he might not have any objection, the government may not have any objection to the documents being taken from the law firms back to the ADC court, provided that he knows where they're being delivered to and where they're going to be held. Do you have answers to where they're going to be delivered to and where they're going to be held? We do not. We did not know the court was going to look at his decision today. But even if we found a vulnerable location, if the royal court district court judge starts imposing a fine of, we'll make up a number, $25,000 a day, what is the entity to do that? If it turns blue, prepare to... Now, of course, the government would have to agree to vacate the order as to the law firms. Yes. And if the royal court then did not impose a fine, a fine which could not be appealed practically, that we could get back to them in that fashion, that's one possible solution. Let me just add one... I know I'm out of time. No, no, no, you're fine. Can I... Yes, of course you can. If the court's really suggesting a self-contempt, which is what the government suggested, that's possible. But when we're looking at a location of $25,000 a day, we look back at Nova Scotia. That is a million feet in fines there. Nobody in this day and age is going to be able to withstand that kind of problem. The documents will get turned over. In fact, we were... The law firms were prepared to produce the documents... The switch had an easy out. He got barred. The switch had an easy out, but it actually got paid. That got paid, and it was another million a day. Then, look, the 10th Circuit case just came out. Nobody suggested returning the lawyers. The 9th Circuit case just came out. Nobody suggested returning the documents from the lawyers to the company. And nobody has suggested that at all. And the problem with it is that the ABC court does not have the wherewithal to withstand the punitive fine. Or, theoretically, the court, if there's an individual custodian, could argue for incarceration for the documents produced. There's no effective way to appeal that. That's the problem. A subject may never be indicted. If a subject is indicted, they may be acquitted. We could not find statistics, obviously, about how subjects may be indicted. But we found that almost 90% of the cases in 2011, the people who were indicted, whatever category they were in, were dismissed before the trial. And the local argument that you have to look at a class of cases applies to the common versus benefit-trivial industrial law insurance line of cases. It's never been applied to parole. It's never applied to a parole-compliant banality. It's a case-by-case decision. And, hopefully, finally, we thought that John, the district court judge, made no mistakes. It wasn't just that what his poll ultimate page or his initial findings were a reasonable basis to suspect. When it makes his final finding, well, it stems from what he says, a reasonable basis to suspect non-penetration. And, beyond that, we think the court should clarify the second stage, that the court has always required more of us to breach the privilege and to look at the documents and have them. The court, we think, got it wrong on insurance. We think the court needs to clarify that and take a look at what infertile means and for the rest, this is what somebody just said was related to. We do not think when the evidence presented, we do not know what the government evidence they presented, we know what we presented, that you could not find infertile for this record. These law firms were doing one-half of the transaction. They were all on the intake side. If you had two or three or four layers of corporate transactions, has the government then argued that every law firm, if there's a tax issue at the end of the day, is subject to harmful exception? It's much too broad. So there are other issues in the opinion. And finally, before I leave this out, the very first page of the University is ineffective and invalid. Because the court ordered production of all the documents, even though the government only asked for 171 to be produced. So the actual order itself was production of documents the government did not seek to produce. But we're really talking about 167 documents at this point, correct?  But I understand the first page of the University was incorrect, was inaccurate. And I know the court reminded me that the government asked all firms to maintain custody and control of the documents after the subpoenas were served. And they did. And there was never a discussion about going to turn it to somebody so ABC Court can be held in consent. What's your response to Mr. Romney's argument that the precedent that he said would really encourage bad behavior? Coming up and getting the documents to the lawyers. He admitted that. He didn't accuse that. He's cautioned us that if we accept... The consequences could be bad. We don't see that. We don't see... Look, I've been practicing for 32 years. I've never seen a client ship documents over to a law firm in anticipation of a prolonged period. I've never seen it. And Mr. LeMachine's been practicing even longer than me. So the conflict is totally horrible. We don't see it happening. This was a 2007 trial. Before... When the lawyers be obliged, when the client calls and says, what do we do? We're obliged to give good advice. If you send the documents over forthwith, you're going to have certain interlocutory politics that you wouldn't otherwise have. I think that's a fair reality. A fair reality is that the ethics department for the law firm is going to say, don't you dare take those documents. We do not buy a law firm's subpoena. No law firm wants to get subpoenaed. So we think there's great efficacy's reason. We don't know what happened. In fact, what the government did was the opposite. The government sought an order against the party that did not have the documents. And they were the first to go on people. That's a separate political argument. I think that's something which should not occur. They should not be able to bring an enforcement order against a party that does not have the records of what was foreseen. And the records in dispute, the government knew ABC didn't have the records? Yes, the government knew ABC did not have the records. The government knew that the law firms had the records. They called us up, they asked us, we told them we had the records. We let them see the 24 boxes absent the five inches. We were able to, which was not perfect, and we were able to have all those documents have been turned over to the government now. Thank you. Thank you, everyone, for well-presented arguments and well-presented briefing. We'll take a matter of advisement. We would like to have a transcript prepared of this oral argument and ask that it be split evenly between the government and the three sides, I guess, on the other side. One half for them, one half for you. Thank you very much. Thank you.